**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

William Gross and Elizabeth Gross,

Plaintiff,

v.

Richard Lurie, Francelyne Lurie, Adam Lurie, and Option Resources,

Defendants.

Civil No. 00-2182 (DWF/AJB)

**FINDINGS OF FACT, CONCLUSIONS OF LAW, ORDER FOR JUDGMENT, AND MEMORANDUM**

---

Larry D. Espel, Esq. and Nancy E. Brasel, Esq., Greene Espel, 333 South Seventh Street, Suite 1700, Minneapolis, Minnesota 55402-2428 on behalf of Plaintiffs.

John R. Stoebner, Esq. and David A. Harbeck, Esq., Lapp, Laurie, Libra, Thomson & Stoebner, One Financial Plaza, Suite 2500, 120 South Sixth Street, Minneapolis, Minnesota 55402 on behalf of Defendants.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on September 28, 2000, pursuant to Plaintiffs' Motion for Temporary Restraining Order, Preliminary Injunction, and Attachment. Pursuant to the Court's September 29, 2000 Order, an evidentiary hearing was held on October 31 and November 6, 2000.

Based upon presentations of counsel, the Court having reviewed the submissions of both parties and the evidence presented, and being otherwise duly advised in the premises, the Court hereby makes the following:

NOV 16 2000
FILED
FRANCIS E. DOSAL CLERK
JUDGMENT ENTD NOV 16 2000
DEPUTY CLERK

**FINDINGS OF FACT**

1. That Plaintiffs William and Elizabeth Gross brought a successful suit in 1996 against Defendant Richard Lurie, their former accountant, for fraud, conversion, and breach of fiduciary duty.

2. That a $3,829,087.38 judgment in favor of the Plaintiffs was entered against Mr. Lurie on July 11, 2000.

3. That Plaintiffs have demonstrated facts showing the existence of ground for attachment under Minn. Stat. § 570.02, subd. 1(1) that Defendant Richard Lurie has assigned and transferred nonexempt property with the intent to defraud his creditors, the Plaintiffs.

3. That Mr. Lurie has failed to make any attempt to satisfy the July 11, 2000, judgment against him. In fact, since the initiation of the underlying lawsuit, Mr. Lurie began making and has continued to make concerted efforts to render himself judgment-proof by transferring money out of his name and into accounts bearing his wife's name and corporate accounts to which he has virtually unfettered access.

4. That Mr. Lurie has maintained and continues to maintain control over all accounts held in the name of Lurie & Associates, Inc., E&R Partners, and Equity Conservation, Inc. Moreover, these corporations are the alter ego of Mr. Lurie. Thus, Mr. Lurie is the owner of any and all of the corporate assets.

5. That Mr. Lurie has maintained and continues to maintain financial control over all accounts held in the name of Option Resources, a corporation established after the judgment was rendered. Mr. Lurie does have ownership interests in the assets of Option Resources. However, due to discovery challenges up to this point, the Court is unable to determine the extent of Mr. Lurie's interests in Option Resources. Mr. Lurie has failed to provide valid business records

documenting the identity of all partners in Option Resources. He has represented, but the Court declines to find at this time, that there are four limited partners, including Francelyne Lurie, and one general partner, Octagon Investments, L.L.C., an entity in the name of Mr. Lurie's son-in-law, Stephen Mars.

6. That since February 2000, Richard Lurie and Francelyne Lurie have transferred monies from their Piper Jaffray joint account (No. 100-465625-120) totaling approximately $730,000 into a Piper Jaffray account (No. 100-561852-120) held by Option Resources. Also during this time, Francelyne Lurie has transferred approximately $186,000 from her individual Piper Jaffray account (No. 100-465624-120) into the Piper Jaffray account (No. 100-561852-120) held by Option Resources. Subsequent to these deposits, approximately $866,395 has been transferred back to the Lurie's joint account and Francelyne Lurie's individual account.

7. That Defendant Lurie has provided no valid documentation to support his characterization that the above-referenced transfers to and from Francelyne Lurie, Richard and Francelyne Lurie jointly, and Option Resources were advancements and subsequent repayments.

8. That over the course of three transactions dated October 19, 1999, November 1, 1999, and December 8, 1999, $500,000 was transferred from the Century Bank checking account (No. 14108266) held by Option Resources to Equity Conservation, Inc. (ECI), an entity owned and controlled by Mr. Lurie.

9. That Mr. Lurie has provided no valid documentation to support his characterization of the $500,000 transfer from Option Resources to ECI as a loan to initiate a model trading program. The Court declines to recognize the promissory note presented by

Mr. Lurie as purportedly held by Option Resources as true, given that it was completely in Mr. Lurie's handwriting, including the only indication that it was paid as negotiated.

10. That on September 28, 1999, $126,000 was transferred from the Century Bank account (No. 14108266) held by Option Resources to the Century Bank account (No. 14108258) held by Octagon Investments, L.L.C. On that same day $100,000 was transferred from the Octagon Investments account to ECI.

11. That Mr. Lurie has provided no documentation or otherwise valid evidence that the above-referenced $100,000 payment to ECI was made pursuant to Mr. Lurie's purported consulting contract with Option Resources.

12. That as of September 30, 2000, the balance of Option Resources' Piper Jaffray account (No. 100-561852-120) was $448,075.74.

13. That as of August 29, 2000, the balance of Option Resources' Century Bank account (No. 14108266) was $3,041.41.

14. That as of August 31, 2000, the balance of the Century Bank account (No. 14108258) held by Octagon Investments, L.L.C. was $64.54. The account was opened on September 28, 1999. At its highest, the account held $26,000 which was the remainder of the initial deposit from the Option Resources transaction, described above, less the purported consulting fee paid to Mr. Lurie via ECI.

15. That as of June 30, 2000, the balance of the Luries' joint Paine Webber account (No. LO 33505-49) was $0.00. The account was opened on January 31, 1997. At its highest, the account held $396,779.85 on June 30, 1997.

16. That as of April 30, 2000, the balance of Richard and Francelyne Lurie's Piper Jaffray account (No. 100-465625-120) was $0.00. The account was opened on May 10, 1999. At its highest, the account held $981,678.91 on December 31, 1999.

17. That as of July 31, 2000, the balance of Mr. Lurie's Piper Jaffray IRA (No. 100-465670-120) was $0.00. The account was opened on May 6, 1999. At its highest, it held $504,101.83 on May 31, 1999. Over the course of the past year and a half, a total of $547,365.25 was transferred out of the account.

18. That as of August 29, 1997, the balance of Mr. Lurie's Merrill Lynch account (No. 67B-12747) was $0.00. Mr. Lurie no longer holds an individual account in his name.

19. That as of April 2000, the balance of Francelyne Lurie's Piper Jaffray account (No. 100-465624-120) was $0.00. The account was opened in May 1999. At its highest, the account held $179,737.40 during March 2000. From July 1999 through January 2000, deposits totaling $111,099.73 were received from Richard and Francelyne Lurie's joint Piper Jaffray account and Richard Lurie's IRA. By April 2000, however, the entire balance was transferred to the Option Resources Piper Jaffray account.

20. That as of October 11, 2000, the balance of Francelyne Lurie's US Bank account (No. 1-047-7127-5799) was $41,839.71. The account was opened on July 14, 2000. Since then, deposits have been received from Option Resources and Lurie & Associates totaling $60,000.00. In addition, a safe deposit box fee has been paid from the account.

21. That as of September 29, 2000, the balance of Firstar Bank account (No. 0010214009) held by ECI was $292.01.

22. That as of August 31, 2000, the balance of Firstar Bank account (No. 0010226341) held by E&R Partners was $9,622,55.

23. That any conclusion of law that may be deemed a finding of fact is incorporated herein as such.

Based upon the above findings of fact, the Court now makes its:

## CONCLUSIONS OF LAW

1. The Court finds and concludes that Defendant has intentionally transferred monies to and through securities and checking accounts held by Francelyne Lurie and Option Resources in order to fraudulently avoid the judgment sought against him, thereby violating Minnesota's Fraudulent Conveyance Act, Minn. Stat. §§ 513.41 - 531.51, specifically § 513.44.

2. The Court finds and concludes that Mr. Lurie transferred monies to and through his wife, Francelyne Lurie, who qualifies as an insider under section 513.44(b)(1). Moreover, Defendant Lurie has failed to present valid or sufficient evidence to outweigh the fraudulent presumption established by the "insider" transfers in question.

3. The Court finds and concludes that Mr. Lurie retained control over monies he transferred to Francelyne Lurie and Option Resources.

4. The Court finds and concludes that Mr. Lurie was faced with the underlying lawsuit at the time that the transfers were made.

5. The Court finds and concludes that the transfers made by Mr. Lurie constituted substantially all of his liquid assets.

6. Any finding of fact that may be deemed a conclusion of law is incorporated herein as such.

Based upon the above findings of fact and conclusions of law, the Court now enters the following:

**ORDER**

Consistent with the findings of fact and conclusions of law, the Court Orders that:

1. Plaintiffs be permitted to contact the purported partners of Option Resources in order to ascertain the extent of Mr. Lurie's interests in the assets of Option Resources.

2. With respect to the Piper Jaffray account (No. 100-561852-120) and the Century Bank account (No. 14108266) held by Option Resources, the Court's orders of September 29, 2000 and October 19, 2000, shall remain in effect until counsel for Plaintiffs have been able to do further discovery pursuant to part (1) of this Order.

3. The safe deposit box, the fee of which was paid from US Bank account (No. 1-047-7127-5799), shall not be opened until counsel for Plaintiffs is/are present. An inventory of all contents shall be taken at that time and shared with counsel for Plaintiffs.

4. With respect to the Piper Jaffray account (No. 100-465624-120) held by Francelyne Lurie, funds held therein up to the amount of $111,099.73 shall be attached pursuant to Minn. Stat. Ch. 570. Plaintiffs shall draft all necessary documents to effectuate the Court's order.

5. With respect to the US Bank account (No. 1-047-7127-5799) held by Francelyne Lurie, funds held therein up to the amount of $60,000 shall be attached pursuant to Minn. Stat. Ch. 570. Plaintiffs shall draft all necessary documents to effectuate the Court's order.

6. With respect to all accounts held by ECI, E&R Partners, and Lurie & Associates, all funds held therein shall be attached pursuant to Minn. Stat. Ch. 570. Plaintiffs shall draft all necessary documents to effectuate the Court's order.

7. Defendants shall not open any new accounts nor close any existing accounts absent stipulation of the parties or further order of this Court.

8. With respect to the taxidermic specimens Plaintiffs allege to have been fraudulently transferred by Mr. Lurie to his son, Adam Lurie, the Court orders that no further transfers shall occur.

8. The Court reserves the right to rule on the appropriateness of attachment as requested by the Plaintiffs with respect to accounts held in the name of Option Resources.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 16, 2000

DONOVAN W. FRANK
Judge of United States District Court

**MEMORANDUM**

The Court has concluded that Defendant Richard Lurie has made no good faith effort to satisfy the July 11, 2000, judgment against him either in whole or in part. Instead, the evidence indicates that Mr. Lurie has fraudulently transferred all money previously held in his name or jointly with his wife to accounts in which, on their face, Mr. Lurie has no interest. However, Mr. Lurie's business practices and personal living expenses indicate to the contrary. Mr. Lurie continues to maintain control over his wife's finances and those of Option Resources, Lurie & Associates, E&R Partners, and ECI as if they were his own. He apparently has free access to the funds of all of the relevant accounts with no interference from other purportedly interested parties, such as Francelyne Lurie and Stephen Mars, President of Octagon Investments and General Partner of Option Resources. He has continued to use the available funds to support his and his wife's lifestyle, which amounts to no small expense, while still maintaining that he

cannot pay any portion of the judgment against him. Furthermore, Mr. Lurie has been unable to provide valid documentation or corroborative testimony to explain the furtive transfers of money from account to account. It is clear from the timing, the direction, and the extent of the transfers that Mr. Lurie intentionally transferred the monies in order to avoid the judgment against him. Mr. Lurie has been unable to account for the dramatic change in his financial circumstances, transforming from an individual with both individually and jointly owned accounts to one with supposedly no direct access to finances.

The Court is genuinely concerned that Mr. Lurie has been less than forthcoming with Plaintiffs in their attempts at discovery. The Court has no doubt that attachment of Mr. Lurie's resources is appropriate. However, in order to properly establish the extent to which attachment is appropriate, it is necessary for Plaintiffs and the Court to have a clear and honest picture of Mr. Lurie's finances, particularly his financial interest in Option Resources. For this reason, the Court has ordered allowances for further discovery with respect to Option Resources.

Based upon the record before the Court, the apparent attempts by the Defendant to frustrate the legal process are without justification. The Court is cautious to protect the financial interests of third parties. However, the Court will not allow such interests to be improperly manipulated to interfere with the Plaintiffs' ability to collect a valid judgment. The interests of all parties will be much better served by a reasonable payment plan with respect to the judgment against Mr. Lurie rather than the continued litigation of these issues at great expense to all parties concerned.

D.W.F.

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: NOV 16 2000

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*